Singer and Sherck, JJ., concur.

James R. Sherck, J., retired, sitting by assignment.

## In re J.S.

[Cite as *In re J.S.*, 184 Ohio App.3d 310, 2009-Ohio-5189.]

Court of Appeals of Ohio,
Sixth District, Williams County.

No. WM–09–005.

Decided Sept. 23, 2009.

Stacey Burns, for appellant.

Katherine J. Middleton, for appellee.

HANDWORK, Presiding Judge.

{¶ 1} This appeal is from the April 1, 2009 judgment of the Williams County Court of Common Pleas, Juvenile Division, which terminated the parental rights of appellant, David S. Upon consideration of the sole assignment of error, we reverse the decision of the lower court. Appellant asserts the following single assignment of error on appeal:

{¶ 2} "I. The trial court failed to protect the father's parental rights."

{¶ 3} The child at issue was removed from her mother's care on October 10, 2006, based on allegations of neglect. Emergency custody was granted to appellee, the Williams County Department of Job and Family Services. Temporary custody based upon dependency was granted to appellee, effective November 7, 2006.[1] The court further ordered appellee to make reasonable efforts to avoid the need for removal of the child from her home and to prepare a case plan for the mother. A case plan was not initiated for appellant because he lived in Indiana, he was never married to the child's mother, and the mother was the primary custodian. Before appellee would initiate a case plan, appellant would have to have steady employment and housing. Appellant did not attend the temporary-custody hearing because he was incarcerated at the time. He was informed of his right to counsel, but was unrepresented at the hearing. He did not seek an appeal from this order.

{¶ 4} Following nearly two years of case planning to reunite the child with the mother, appellee moved for permanent custody of the child on October 6, 2008. Pursuant to R.C. 2151.413, an adjudication hearing was held on January 20 and 21, 2009, and a disposition hearing was held on February 27, 2009. The trial court issued its judgment on April 1, 2009, holding that the rights of the parents should be terminated. The trial court granted permanent custody of the child to appellee.

{¶ 5} Despite having received notice of the hearing by certified mailing, appellant did not attend the permanent-custody-adjudication hearing. The prosecutor indicated that the caseworker had spoken with appellant on January 16,

---

1. The trial court's entry was journalized on November 13, 2006.

2009, and that appellant had stated that he would be unable to afford to travel to the hearing. Appellant had not appeared in any previous proceeding, although there were issues concerning timely notice and his incarceration. The trial court proceeded with the adjudication hearing despite the fact that appellant was unrepresented. No discussion was held regarding whether appellant had a constitutional right to appointed counsel to represent him or had waived his right to counsel.

{¶ 6} After the adjudication hearing, but prior to the dispositional hearing, appellant first entered an appearance in the case. Finding him to be indigent, the court appointed counsel to represent appellant from that time forward. Appellant's appointed counsel did not raise the issue of whether appellant should have been appointed counsel earlier in the case.

{¶ 7} Generally, unless a party makes a timely objection to an error in the lower court, it is deemed forfeited and will not be considered on appeal as a basis for reversal of the lower court's judgment. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 23. However, the forfeiture doctrine is discretionary, and appellate courts may consider the alleged error if it falls within the scope of the plain-error doctrine. *State v. Wogenstahl* (1996), 75 Ohio St.3d 344, 357, 662 N.E.2d 311, certiorari denied (1996), 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169.

{¶ 8} The plain-error doctrine provides that an error should be reviewed if it "seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus, and *O'Connell v. Chesapeake & Ohio RR. Co.* (1991), 58 Ohio St.3d 226, 229, 569 N.E.2d 889. Also, plain errors are those that are clearly indicated in the record and should have been apparent to the trial court. *State v. Craft* (1977), 52 Ohio App.2d 1, 7, 6 O.O.3d 1, 367 N.E.2d 1221. Such cases are rare in civil appeals. *Goldfuss v. Davidson*. However, we find that the issue raised in this case rises to the level of plain error and, therefore, we will consider it on appeal.

{¶ 9} On appeal, appellant asserts a single assignment of error, arguing that the trial court infringed upon appellant's fundamental constitutional right to parent his child when it proceeded in this case without appointing counsel to represent his interests. Appellee contends that appellant waived his right to counsel when, after he was given notice of his right to appointed counsel, he failed to raise the issue before the trial court. Second, appellee argues that the trial court did not abuse its discretion when it failed to appoint counsel until appellant requested the appointment.

{¶ 10} Whether or not the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that a parent be afforded the right to counsel in actions where the state seeks to permanently and involuntarily terminate his or her parental rights must be determined on a case-by-case basis by the trial court, whose discretion is subject to appellate review. *Lassiter v. Durham Cty. Dept. of Social Serv.* (1981), 452 U.S. 18, 32, 101 S.Ct. 2153, 68 L.Ed.2d 640, rehearing denied (1981), 453 U.S. 927, 102 S.Ct. 889, 69 L.Ed.2d 1023. See also *In re Miller* (1984), 12 Ohio St.3d 40, 41, 12 OBR 35, 465 N.E.2d 397. There is a presumption that due process mandates appointment of counsel only for indigent defendants who face deprivation of their physical liberty. To overcome this presumption, the court considers "the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions." *Lassiter* at 27, 101 S.Ct. 2153, 68 L.Ed.2d 640. Ohio statutory law goes beyond the due-process requirements of the Fourteenth Amendment when it provides that a parent has a right to counsel in all proceedings under R.C. Chapter 2151. R.C. 2151.352.

{¶ 11} Generally, it is "the relationship of love and duty in a recognized family unit" that gives rise to "an interest in liberty entitled to constitutional protection." *Lehr v. Robertson* (1983), 463 U.S. 248, 258, 103 S.Ct. 2985, 77 L.Ed.2d 614. " '[S]tate intervention to terminate [such a] relationship * * * must be accomplished by procedures meeting the requisites of the Due Process Clause.' " Id., quoting *Santosky v. Kramer* (1982), 455 U.S. 745, 752, 102 S.Ct. 1388, 71 L.Ed.2d 599. But, the court has also recognized that an unwed father who "demonstrates a full commitment to the responsibilities of parenthood by 'com[ing] forward to participate in the rearing of his child,' * * * acquires substantial protection under the due process clause. * * * But the mere existence of a biological link does not merit equivalent constitutional protection." *Lehr* at 261, 103 S.Ct. 2985, 77 L.Ed.2d 614, quoting *Caban v. Mohammed,* 441 U.S. 380, 392, 99 S.Ct. 1760, 60 L.Ed.2d 297. Furthermore, the trial court may take into consideration that the parent is not interested in participating in or challenging the termination proceedings. *Lassiter,* 452 U.S. at 33, 101 S.Ct. 2153, 68 L.Ed.2d 640.

{¶ 12} In this case, the trial court recognized appellant's statutory right to counsel and informed him of this right in all the notices that were sent to him regarding the hearings before the court. Appointed counsel was not provided, however, until after appellant appeared at the dispositional hearing and asserted his indigency. Upon examination of the law, we find that this process satisfies statutory requirements, but not due-process requirements.

{¶ 13} Parents in termination proceedings are provided with certain statutory procedural rights. "[I]f a party appears without counsel, the court shall ascertain whether the party knows of the party's right to counsel and of the party's right to be provided with counsel if the party is an indigent person." R.C. 2151.352. But, the party must appear in the case before the court is obligated to inquire as to whether they need appointed counsel, and an affidavit of indigency must be filed. *In re Nevelos*, 11th Dist. No. 2007–G–2804, 2008-Ohio-3606, 2008 WL 2796912, ¶ 31; *In re Williams*, 10th Dist. No. 03AP–1007, 2004-Ohio-678, 2004 WL 285560, ¶ 13; and *In re Perkins* (Dec. 31, 1987), 6th Dist. No. L–87–065, 1987 WL 31989, at *2. Since appellant did not appear at the hearing and request appointed counsel, he waived his statutory right to appointed counsel.

{¶ 14} Waiver of a statutory right, however, is different from waiver of a constitutional right. *In re Nevelos* at ¶ 17. Waiver of the constitutional right to counsel requires "an intentional relinquishment or abandonment of a known right." Id., citing *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 105, and *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 31. Under criminal law, due process mandates that the trial court cannot presume that a party waived his Sixth Amendment right to the assistance of counsel from a silent record. *State v. Wellman* (1974), 37 Ohio St.2d 162, 66 O.O.2d 353, 309 N.E.2d 915, paragraph two of the syllabus. " '[T]here must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.' " Id. at 171, 66 O.O.2d 353, 309 N.E.2d 915, quoting *Carnley v. Cochran* (1962), 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70.

{¶ 15} Termination-of-parental-rights cases are treated as quasi-criminal actions because the termination of parental rights affects the fundamental liberty interest of parents to oversee the "care, custody, and upbringing of their children," which is protected by the United States Constitution. *In re D.M.*, 3d Dist. No. 5–09–12, 5–09–13, and 5–09–14, 2009-Ohio-4112, 2009 WL 2489238, ¶ 29, citing *In re Murray* (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169, and *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599. In a criminal action, however, the defendant is always brought before the court and, therefore, a determination of whether counsel should be appointed is automatically made. In a termination-of-parental-rights case, the parent does not have to attend the hearing. Should the trial court presume waiver when the parent has clearly been notified of his right to appointed counsel? We think not.

{¶ 16} The trial court was informed before the hearing began that appellant indicated that he could not afford transportation to the hearing. The court also knew that while appellant had not attended any previous proceedings, there were justifiable reasons for some of the early proceedings. It was only during the

adjudication hearing that the trial court would hear testimony of the caseworker regarding appellant's limited contact with the child or appellee over the prior two years. The only evidence before the trial court at the beginning of the hearing indicated that appointed counsel might be necessary to protect appellant's constitutional rights. The court needed additional facts to determine whether appellant was entitled to appointed counsel and whether he was truly indigent. We find that failure to make such a further inquiry was plain error. Proceeding to terminate the rights of a possibly indigent parent without determining whether he was entitled to appointed counsel clearly denies the parent fundamental due process. Therefore, appellant's sole assignment of error is well taken.

{¶ 17} Having found that the trial court did commit error prejudicial to appellant and that substantial justice has not been done, the judgment of the Williams County Court of Common Pleas, Juvenile Division, is reversed. This case is remanded to the trial court for further proceedings consistent with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed
and cause remanded.

SINGER and OSOWIK, JJ., concur.