[Cite as *State v. Dupree*, 2026-Ohio-2158.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                    :

     Plaintiff-Appellee,                   :

                                               No. 25AP-394

v.                                                    :          (M.C. No. 2023 CRB 17716)

William Dupree,                              :          (REGULAR CALENDAR)

     Defendant-Appellant.             :

---

D E C I S I O N

Rendered on June 9, 2026

---

**On brief:** *Zachary M. Klein*, City Attorney, *Melanie R. Tobias-Hunter*, and *Dave Pelletier*, for appellee.

**On brief:** *Mitchell A. Williams*, Public Defender, and *Jason M. Inman*, for appellant.

---

APPEAL from the Franklin County Municipal Court

BOGGS, P.J.

{¶ 1}  Defendant-appellant, William Dupree, appeals the judgment and entry of the Franklin County Municipal Court which revoked his parole.  For the following reasons, we reverse the trial court's judgment.

## I.  PROCEDURAL HISTORY AND FACTS

{¶ 2}  On December 12, 2023, Dupree pled guilty to one count of criminal mischief, in violation of R.C. 2909.07, and was placed on probation for two years, which was set to end on December 11, 2025.

{¶ 3}  On June 3, 2024, Dupree's parole officer filed in a statement of violations that Dupree was charged with domestic violence and assault in case Franklin M.C. No. 2024 CRB 8990.  On August 5, 2024, the trial court held a probation violation hearing.  On February 20, 2025, Dupree's probation officer filed a second statement of violations alleging that Dupree failed to appear for three scheduled appointments, as well as three

scheduled drug screens to determine if he was in compliance with a "No Consumption Order." (Feb. 20, 2025 Statement of Violations at 1.) The statement also alleged that Dupree failed to pay his probation fees and court costs, and he did not provide verification of an updated assessment to determine if counseling was needed.

{¶ 4} A revocation hearing was set to take place on March 12, 2025, but it was ultimately continued. The entry dated March 13, 2025 stated that "[Dupree] is pro se and wishes to consult with [an attorney]." The entry did not contain any findings.

{¶ 5} On April 30, 2025, the trial court held a hearing on Dupree's probation violations. The court stated:

> THE COURT: We're here for a probation revocation hearing. We're here for mitigation, with you having previously been found to violate your probation. Anything you want to say today?
>
> [DUPREE]: Sir, I really want to have an attorney.
>
> THE COURT: What's that?
>
> [DUPREE]: I want to have an attorney.
>
> THE COURT: I know, but I've given you a chance to do that; and you haven't done that because you're too busy.
>
> [DUPREE]: Sir, I need an attorney.
>
> THE COURT: I get it. I get it. I get it. Anything you want to say on your own behalf before I decide what to do about your probation?
>
> [DUPREE]: Sir, I have a job.
>
> THE COURT: Okay. All right. What else do you want to say? Anything else?
>
> [DUPREE]: No. sir.
>
> THE COURT: All right. Probation revoked. Defendant to serve 69 days[.]

(Apr. 30, 2025 Tr. at 2-3.)

{¶ 6} The trial court ordered enforcement of Dupree's sentence to begin on May 30, 2025. On May 12, 2025, Dupree, through counsel, filed a notice of appeal. On May 13, 2025, the trial court granted a motion to stay pending appeal.

{¶ 7} On December 23, 2025, the state and Dupree filed a joint brief arguing the following assignments of error:

> [1.] The trial court violated appellant's constitutional rights to due process of law when it revoked appellant's probation without a legal determination that appellant had violated the terms of his probation.

> [2.] The trial court violated appellant's constitutional rights to the assistance of counsel when it denied appellant the assistance of counsel at his probation revocation hearing.

## II. DISCUSSION

{¶ 8} The state and Dupree first argue that Dupree's constitutional rights to due process were violated as the trial court did not make a legal determination that he violated the terms of his probation. We agree.

{¶ 9} The United States Supreme Court has established a bipartite procedure for probation revocation through a preliminary probable cause hearing, to be followed by a final revocation hearing. *Gagnon v. Scarpelli*, 411 U.S. 778 (1973). The Supreme Court has stated that

> the revocation decision has two analytically distinct components:

> "The first step in a revocation decision thus involves a wholly retrospective factual question: **whether the parolee has in fact acted in violation of one or more conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise**: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation?" [*Morrissey v. Brewer*,] 408 U.S. [471], 479-480 [(1973)].

(Emphasis added. ) *Id.* at 784.

{¶ 10} The record does not show that the trial court ever made a formal determination that Dupree violated the conditions of his probation. The entry revoking Dupree's probation does not state Dupree had violated his probation, but merely that it was revoked and that he would serve "69 days FCCC." While the trial court judge stated at the April 30, 2025 hearing that Dupree had "previously been found to violate [his] probation," the March 13, 2025 entry does not contain any finding that he violated his probation. (Apr. 30, 2025 Tr. at 2.) Our examination of the record does not show that the trial court

found Dupree violated one or more conditions of his probation. As the Supreme Court stated in *Scarpelli,* this first determination that Dupree violated probation must be met before the trial court can proceed to determine whether to commit the defendant to incarceration. We therefore sustain Dupree's first assignment of error.

{¶ 11} The second assignment of error states that Dupree was denied his right to the assistance of counsel. Again, we agree. Pursuant to the Sixth Amendment to the United States Constitution and Article I, Section 10, of the Ohio Constitution, a criminal defendant has the right to assistance of counsel. *State v. Martin*, 2004-Ohio-5471, ¶ 22. The right to counsel applies in misdemeanor cases, including petty offense cases, that could result in a term of imprisonment. *State v. White*, 2022-Ohio-665, ¶ 19 (10th Dist.), citing *State v. Downie*, 2009-Ohio-4643, ¶ 17 (7th Dist.). Further, the right to counsel extends to cases involving a suspended sentence capable of subsequent revocation that would result in incarceration. *Id.*, citing *State v. Davis*, 2009-Ohio-4786, ¶ 32 (2d Dist.), citing *Alabama v. Shelton*, 535 U.S. 654 (2002).

{¶ 12} Our examination of the record indicates that not only was Dupree without the assistance of counsel, but the trial court ignored his repeated requests to obtain counsel and did not engage in a Crim.R. 44 waiver of counsel. We accordingly sustain the second assignment of error.

## III. CONCLUSION

{¶ 13} Having sustained both assignments of error, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this decision and the law.

*Judgment reversed;*
*cause remanded.*

EDELSTEIN and DINGUS, JJ., concur.

———————————